UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 09-CV-1529 (JFB) (WDW)

---

DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY,

Plaintiff,

VERSUS

PATHMARK STORES, INC., ROXANNE BECKMANN, AND JOHN BECKMANN,

Defendants.

---

MEMORANDUM AND ORDER
October 27, 2010

---

JOSEPH F. BIANCO, District Judge:

Discover Property & Casualty Insurance Company ("plaintiff" or "Discover") brought this action against Pathmark Stores, Inc. ("Pathmark" or "defendant"), and against Roxanne Beckmann and John Beckmann ("the Beckmanns"), seeking a declaratory judgment that Discover is not obligated to defend or indemnify Pathmark against claims brought by the Beckmanns in an underlying personal injury case pending in New York State Supreme Court ("the underlying action"). Discover has moved for summary judgment on the ground that Pathmark violated the terms of the excess liability insurance policy issued by Discover to Pathmark by not providing Discover with timely notice of the claims related to the underlying action. Pathmark, in turn, has filed a cross-motion for summary judgment on the ground that, although its notice to Discover may have been untimely, Discover failed to disclaim coverage under the excess liability policy in a timely fashion. Discover contends that its delay in disclaiming coverage was reasonable and necessary to conduct an investigation regarding whether Pathmark had violated the terms of the excess liability insurance policy. As set forth below, the cross-motions for summary judgment are denied because the Court concludes that disputed issues of material fact exist as to the timeliness of Discover's disclaimer—namely, whether Discover provided notice of disclaimer as soon as reasonably possible under the circumstances—thereby precluding the Court from granting summary judgment in favor of either party.

I. BACKGROUND

A. Facts[1]

Discover issued an excess liability insurance policy, number D008L00004, to Pathmark for the one-year period from August 1, 2005 to August 1, 2006 ("excess liability policy" or "policy"). (Pl.'s 56.1 ¶ 1.) The policy carries a limit of liability of $1,250,000 for each occurrence, subject to a self-insured retention of $750,000. (*Id.* ¶ 2.) The policy also provides, in relevant part, that Pathmark must notify Discover of any:

> occurrence, accident, incident, offense, injury, loss, or act, error or omission which may result in a claim or suit seeking an amount for ultimate net loss in excess of the self-insured retention.

(*Id.* ¶ 3 (internal quotation marks omitted).) This notice must be provided no later than 30 days after Pathmark receives notice of such occurrence or other triggering event. (*Id.*) Additionally, Pathmark must provide Discover with:

> [w]ritten notification of each claim of suit which has, should have or is likely to have, without regard to liability, a reserve equal to or exceeding fifty percent (50%) of the self-insured retention. Written notice must be provided as soon as possible, but no later than fifteen (15) calendar days from the date [Pathmark has] sufficient knowledge of facts surrounding such claim or suit which could put [Pathmark] on notice that such reserve or payment is indicated.

(*Id.* (internal quotation marks omitted).)

On February 12, 2006, Roxanne Beckmann ("Beckmann") allegedly fell and injured herself on a defective sidewalk at a Pathmark supermarket located in Jericho, New York. (*Id.* ¶ 4.) Subsequently, on July 19, 2006, Beckmann and her husband filed suit against Pathmark and a number of individual defendants in New York State Supreme Court, Nassau County, alleging that Beckmann sustained unspecified "severe and permanent" injuries from her fall and seeking $250,000 in damages. (*See* Affidavit of John D. McKenna In Support of Plaintiff's Motion for Summary Judgment ("McKenna Aff."), Ex. B ¶ 8.)

Pathmark, however, did not notify Discover of the Beckmanns' lawsuit until January 23, 2009. (Pl.'s 56.1 ¶ 6.) In its notice of claim, Pathmark informed Discover that plaintiff's "injuries to her back aggravated her pre-existing cervical condition which resulted in multiple surgeries to her back to relieve the pain." (McKenna Aff., Ex. C.) Pathmark also provided Discover with "a copy of the claimant profile, the narrative

---

[1] The Court has taken the facts set forth below from the parties' pleadings, motion papers, affidavits, and exhibits, and from the parties' respective Rule 56.1 statements of fact. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2001). Thus, on Discover's motion, the Court construes the evidence in the light most favorable to the Pathmark. On Pathmark's motion, the Court construes the evidence in the light most favorable to Discover. Unless otherwise noted, where a party's 56.1 statement or deposition is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.

report, . . . medical reports, a copy of our investigation, the summons & complaint, and defense counsel reports." (*Id.*) Other than the summons and complaint, these underlying documents were not provided to this Court for review.

On February 6, 2009, Daniel Lynch, Managing Director of Discover, emailed Pathmark to ask both "why . . . this matter [was] reported to [Discover] only now" and "[w]hen [Pathmark] learn[ed] of the claimed surgeries." (McKenna Aff., Ex. D.) Lynch added that it seemed that Discover "should have received [notice] sooner," and he further asked Pathmark to provide Discover with the lost wage and medical specials, the amount of plaintiffs' demand, and to confirm that the medical lien was over $300,000. (*Id.*) Based on the record before the Court, there is no evidence that Pathmark responded to Discover's initial inquiry.

On March 10, 2009, Lynch sent a follow-up email to Pathmark with the same questions. (McKenna Aff., Ex. E.) Lynch also clarified in this email that the medical lien "of $34,800 [was] only for the 2007 treatment." (*Id.*) That same day, Pathmark (through a third party) responded to Lynch's email and explained that: (1) the defense estimated that the jury verdict could be "in the area of $1,000,000," (2) plaintiff had "outstanding medical bills in excess of $300,000," and (3) plaintiff's demand was $1.7 million. (Affidavit of Christopher J. Roess In Support of Defendant's Cross-Motion and In Opposition to Plaintiff's Motion ("Roess Aff."), Ex. 2.) Pathmark did not state when it learned of this information. Pathmark also provided "certain responsive information" on March 13, 2009, but the parties do not specify what that information was. (Pl.'s 56.1 ¶ 13.)

Thereafter, on March 16, 2009, Discover issued a reservation of rights letter ("first RoR letter") that stated in pertinent part:

> Although[] this claim's potential exposure and coverage tender was known by Pathmark in 2007, [Discover] did not receive notice of this matter until A&P's 1/23/2009 letter. We must therefore inform you that [Discover] is hereby reserving our rights to disclaim coverage to you based upon, but not necessarily limited to, the above-cited policy provision due to Pathmark/A&P's failure to timely notify [Discover] of this loss. . . . [Discover] expressly reserves the right to deny coverage on the basis of such late notice in the event that any verdict or judgment impacts the coverage layer above the self-insured retention.

(McKenna Aff., Ex. F at 2, 4.) Discover also acknowledged in this letter that it had received a November 2, 2007 report from defense counsel "which described the plaintiff's claimed injuries as a severe exacerbation and subluxation of . . . her prior acute neck injuries." (*Id.*)

After issuing its first RoR letter, Discover sought additional information from Pathmark. Specifically, on March 23, 2009, Discover demanded that Pathmark and its defense counsel allow Discover to review the litigation file for the underlying action. (Pl.'s 56.1 ¶ 16.) Discover conducted this review on April 2, 2009, and later issued a supplemental reservation of rights letter on April 13, 2009 (the "second RoR letter"). (*Id.* ¶¶ 17-18.) The second RoR letter stated that, through its investigation, Discover had determined that "Pathmark was well aware of the severity of

3

the plaintiff's injuries, the multiple surgeries she has undergone and the exposure presented as early as November 2006 when the bill of particulars was received." (McKenna Aff., Ex. G at 1.) Discover advised Pathmark that "[b]ased upon Pathmark's late notice . . . coverage under the [Discover] policy appears remote," and alerted Pathmark that it would file a declaratory judgment action "seeking a determination of the non-existence of coverage" under the policy. (*Id.* at 1-2.) The instant declaratory judgment action was filed the following day on April 14, 2009.

B. Procedural History

On April 14, 2009, Discover filed its complaint in this action. On June 1, 2010, the Court held a pre-motion conference and set a briefing schedule for the parties' respective motions for summary judgment. Discover filed its motion for summary judgment on July 16, 2010, and Pathmark filed its cross-motion for summary judgment and opposition to Discover's motion on August 16, 2010. On August 27, 2010, Discover filed its reply brief in support of its motion and in opposition to Pathmark's cross-motion. Pathmark filed its reply on September 10, 2010. The Court heard oral argument on the motions on October 22, 2010, and has fully considered the submissions and arguments of the parties.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 (2d Cir. 2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . The nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars' showing that a trial is needed."

4

*R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. APPLICATION

Discover argues that it is entitled to summary judgment on the ground that Pathmark failed to timely notify Discover of the claims in the underlying action as required by the notice provisions of the excess liability insurance policy. Pathmark concedes that its notice to Discover was untimely, but argues that Discover is nonetheless obligated to defend and indemnify Pathmark under the policy because Discover improperly delayed in disclaiming its coverage of Pathmark. Discover responds that its delay was the result of a reasonable and necessary investigation into the timeliness of Pathmark's notice of claim and, as such, does not preclude granting summary judgment in its favor and denying Pathmark's cross-motion. For the reasons set forth herein, the Court finds that disputed issues of material fact exist as to the timeliness of Discover's disclaimer, and, accordingly, the Court denies both parties' motions for summary judgment.

### A. Applicable Law

As a threshold matter, under New York law, an insured's failure to comply with a policy's notice provision violates a condition precedent to coverage, and relieves an insurer of an obligation to defend or indemnify the insured. *See Argo Corp. v. Greater N.Y. Mut. Ins. Co.*, 827 N.E.2d 762, 764 (N.Y. 2005), *superceded by statute on other grounds*, N.Y. Ins. L. § 3420(c)(2); *accord Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir. 1987) ("Under New York law, compliance with a notice-of-occurrences provision in an insurance policy is a condition precedent to an insurer's liability under the policy."). The insured's delay in providing the insurance carrier with a notice of claim may be excused, however, "by proof that the insured either lacked knowledge of the occurrence or had a reasonable belief of nonliability." *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995). In other words, where the insured "'in good faith reasonably believe[d] there [was] no policy coverage or that the insured was not liable on the main action,'" the failure to provide timely notice does not preclude coverage under the applicable insurance contract. *Id.* (quoting *Kason v. City of N.Y.*, 373 N.Y.S.2d 456, 459 (N.Y. Sup. Ct. 1975)).[2]

---

[2] In 2008, New York Insurance Law Section 3240 was amended to place the burden on the insurer to prove prejudice from an insured's failure to provide a timely notice of claim, so long as notice was provided within two years of the time required by the insurance policy. *See* N.Y. Ins. L. § 3240(c)(2)(A)(i). If notice was provided more than two years after the requisite time, however, the amended statute places the burden on "the insured, injured person or other claimant to prove that the insurer has not been prejudiced." *Id.*

Nonetheless, even where the insured's notice to the insurer was untimely, denial of coverage is not automatic. Instead, the insurer must "give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." N.Y. Ins. L. § 3420(d); *see also Mount Vernon Fire Ins. Co. v. Harris*, 193 F. Supp. 2d 674, 676-77 (E.D.N.Y. 2002) (citing *Ward v. Corbally, Gartland & Rappleyea*, 615 N.Y.S.2d 430, 431 (App. Div. 1994) and *Kramer v. Interboro Mut. Indem. Ins. Co.*, 574 N.Y.S.2d 575, 576 (App. Div. 1991)). The duty to disclaim as soon as is reasonably possible is triggered "once the insurer has sufficient knowledge of facts entitling it to disclaim, or knows that it will disclaim coverage." *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 801 N.E.2d 835, 837 (N.Y. 2003); *see also In re Arbitration between Allcity Ins. Co. & Jimenez*, 581 N.E.2d 1342, 1343 (N.Y. 1991) ("The timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage."). "An insurer who delays in giving written notice of disclaimer bears the burden of justifying the delay." *First Fin. Ins. Co.*, 801 N.E.2d at 839. An insurer can satisfy this burden by proving, for example, that "the delay was reasonably related to the completion of a necessary, thorough, and diligent investigation" by the insurer into "issues that [would] affect the decision on whether to disclaim." *Quincy Mut. Fire Ins. Co. v. Uribe*, 845 N.Y.S.2d 434, 435 (App. Div. 2007); *see also Mount Vernon Fire Ins. Co.*, 193 F. Supp. 2d at 677 ("New York courts have also consistently recognized that a prompt, good faith investigation of the claim by the insurer may justify a delay that would normally be deemed unreasonable absent explanation."); *First Fin. Ins. Co.*, 801 N.E.2d at 839 ("While Insurance Law § 3420(d) speaks only of giving notice 'as soon as is reasonably possible,' investigation into issues affecting an insurer's decision whether to disclaim coverage obviously may excuse delay in notifying the policyholder of a disclaimer."). In contrast, an insurer cannot justify a delay where the basis for disclaimer "was or should have been readily apparent before the onset of the delay." *First Fin. Ins. Co.*, 801 N.E.2d at 839. In such cases, the insurer's explanation for the delay will be deemed "insufficient as a matter of law." *Id.* Similarly, "[a] delay will be found unreasonable in situations where the additional investigation was found to have no bearing on the initial reasons for denial of coverage and, quite obviously, when no reason at all has been given for the delay." *Ostrowski v. Am. Safety Indem. Co.*, No. 07-cv-3977 (DLI) (VVP), 2010 WL 3924679, at *4 (E.D.N.Y. Sept. 30, 2010). Nevertheless, only in "exceptional case[s]" should the question of whether a delayed disclaimer was reasonable be decided as a matter of law; in most cases, this question is a question of fact to be determined at trial. *Hartford Ins. Co. v.*

---

§ 3240(c)(2)(A)(ii). In any event, the Court need not determine whether the insurer or the insured must prove prejudice in this case because the amendment only applies to insurance policies that were issued or delivered on or after January 17, 2009. *See Ponok Realty Corp. v. United Nat'l Speciality Ins. Co.*, 893 N.Y.S.2d 125, 127 (App. Div. 2010) ("[I]t is clear from section 8 of the act amending Insurance Law § 3420 that the amendments were to apply to policies issued or delivered in this state on or after January 17, 2009." (internal quotation marks and alterations omitted)). Accordingly, because the policy in question here was issued prior to the effective date of the amendment, this provision does not apply in this case.

6

*Nassau Cnty.*, 389 N.E.2d 1061, 1062-63 (N.Y. 1979); *see also Ostrowski*, 2010 WL 3924679, at *4 ("'The question of unreasonableness becomes a question of fact, or if extreme, of law, depending on the circumstances of the case which make it reasonable for the insurer to take more or less time to make, complete, and act diligently on its investigation of its coverage or breach of conditions in its policy.'" (quoting *Allstate Ins. Co. v. Gross*, 265 N.E.2d 736, 739 (N.Y. 1970))).

B. Analysis

As an initial matter, Pathmark does not dispute Discover's allegation that Pathmark's notice of claim was untimely. Thus, the only question remaining is whether Discover, having received Pathmark's delayed notice, disclaimed coverage in a timely fashion. Discover contends that "[w]hile Pathmark's untimely notice provided certain details of the claims in the Underlying Action, whether the same violated the conditions of the Discover Excess Policy was not initially discernable." (Pl.'s Reply at 4.) Accordingly, Discover argues that its delay in disclaiming was necessary to conduct an investigation into when Pathmark became aware that "the severity and potential value of the claims" would trigger the notice provisions of the excess liability policy. (*Id.*) Pathmark, in contrast, claims that the sole ground for the disclaimer—late notice by Pathmark—was "abundantly clear as of the date of the first notice," and, accordingly, Pathmark alleges that Discover's subsequent investigation was unnecessary. (Def.'s Mem. of Law at 7.)[3]

---

[3] Pathmark also contends that Discover's disclaimer is insufficient as a matter of law because Discover has never provided Pathmark with written notice of a disclaimer and, instead, has only issued two reservation of rights letters and then commenced the instant declaratory judgment action. (Def.'s Mem. of Law at 5-6.) However, the case that Pathmark cites in support of this argument, *Republic Franklin Insurance Company v. Pistilli*, 791 N.Y.S.2d 639 (App. Div. 2005), does not necessitate the result advocated by Pathmark. In *Republic Franklin*, the court held that the insurer had a reasonable basis for disclaiming coverage as of the date upon which the insured had provided certain information about the underlying action. *Id.* at 641. The insurer, however, merely issued a reservation of rights letter several weeks thereafter and then waited five months to commence the action against the insured. The court held that the reservation of rights letter did not constitute an effective disclaimer and, accordingly, granted summary judgment on this issue for the insured. *Id.* In so holding, the court noted that "[w]hen in doubt, an insurer *should* issue a prompt disclaimer and then seek a declaratory judgment concerning its duty to defend or indemnify, rather than seeking such a judgment in lieu of issuing a disclaimer." *Id.* (emphasis added). Although this may be the better practice for insurers, the court did not hold that insurers are *required* to disclaim before filing a declaratory judgment action. In other words, if the declaratory judgment action is filed in a timely manner (rather than five months after the insurer learns of the basis for disclaimer, as was the case in *Republic Franklin*), it may constitute sufficient notice of disclaimer under the law. Indeed, other courts have recognized that commencement of a declaratory judgment action constitutes sufficient notice of disclaimer for purposes of New York Insurance Law Section 3240. *See Blue Ridge Ins. Co. v. Empire Contracting & Sales, Inc.*, 900 N.Y.S.2d 670, 670 (App. Div. 2010) ("Here, the plaintiff's commencement of the subject declaratory judgment action on August 15, 2001, constituted timely notice of disclaimer as to [the defendant]."); *Generali-U.S. Branch v. Rothschild*, 744 N.Y.S.2d 159, 161 (App. Div. 2002) ("Commencement of a declaratory judgment action constitutes sufficient notice of disclaimer and commencement of such an action within two

7

First, the Court concludes that a disputed issue of fact exists as to whether the grounds for disclaimer were immediately obvious from Pathmark's January 23, 2009 notice of claim, together with other information available to Discover at that time. Although the nearly three-year gap between the date of Beckmann's fall and the date upon which Pathmark provided Discover with notice may have alerted Discover to the possibility that the notice was untimely, Discover could not conclusively determine that the notice was late without knowledge of when Pathmark became aware that the Beckmanns' claims would be severe enough to trigger the provisions of Pathmark's excess liability policy. In determining whether notice is timely under an excess liability policy, "the focus is on when the insured reasonably should have known that the claim against it would likely exhaust its primary insurance coverage and trigger its excess coverage, and whether any delay between acquiring that knowledge and giving some notice to the excess carrier was reasonable under the circumstances." *Morris Park Contracting Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 822 N.Y.S.2d 616, 619 (App. Div. 2006). Accordingly, to evaluate whether Pathmark complied with the notice provisions of the excess liability policy—a determination that, in turn, would allow Discover to reasonably conclude whether grounds existed to disclaim—Discover had to determine when Pathmark learned that Beckmann's fall would result in a claim that either sought "an amount for ultimate net loss in excess of the [$750,000] self-insured retention" or that "has, should have or is likely to have, without regard to liability, a reserve equal to or exceeding fifty percent (50%) of the self-insured retention." (Pl.'s 56.1 ¶ 3.)

Based on the evidence presented to this Court, it is not clear whether the notice letter, along with other materials available to Discover at that time, provided such information to Discover. On the one hand, the face of Pathmark's notice letter makes no mention of when Pathmark learned that Beckmann's claims would trigger the excess liability policy. In fact, the letter does not even state the amount of money sought by Beckmann, and instead merely attaches the complaint, which reveals that the Beckmanns were seeking $250,000 in damages—an amount that would not have triggered Pathmark's excess coverage. Thus, insofar as the letter did not disclose when Pathmark concluded its excess coverage would be implicated by the Beckmanns' claims, it appears that the grounds for disclaimer may not have been immediately obvious from the notice letter. Although Pathmark points to the February 6, 2009 email from Discover as evidence that Discover had some awareness of the value of the claim, a rational trier of fact could conclude (if Discover's evidence is credited and all reasonable inferences are drawn in its favor) that Discover still lacked sufficient information at that juncture and needed to conduct an investigation. On the other hand, if Pathmark's evidence is credited and all reasonable inferences are drawn in its favor, a rational trier of fact could reach the opposite conclusion. In short, based upon the emails sent in the days following Pathmark's issuance of its notice of claim, and in light of the record as a whole, there is a genuine issue

---

months after a decision to disclaim is reasonable and timely." (citation omitted)). Thus, in this case, where Discover issued two reservation of rights letters and then commenced the instant action shortly thereafter, this Court will view April 14, 2009, the date upon which Discover filed its complaint, as the date of its notice of disclaimer.

8

of disputed fact as to whether Discover had sufficient information in its possession at the time of Pathmark's notice to make a determination regarding disclaimer, or whether further investigation was required.[4] Accordingly, the Court is unable to grant summary judgment in favor of either party.

Moreover, even assuming *arguendo* that an investigation was required to determine whether Pathmark's notice was late under the terms of the policy, a material factual dispute exists as to whether the investigation was conducted in a prompt and diligent fashion and whether the instant action was filed as soon as reasonably possible after the investigation revealed the untimeliness of Pathmark's notice. For example, Pathmark points to Discover's first RoR letter as evidence that Discover was aware as of March 16, 2009 that Pathmark's notice was untimely. (*See* Def.'s Reply at 3.) In this letter, Discover acknowledged that "this claim's potential exposure and coverage tender was known by Pathmark in 2007" (McKenna Aff., Ex. F at 2), thus indicating that Discover may have been aware as of March 16, 2009 that Pathmark's delayed notice provided grounds for disclaimer. Discover, however, contends that the information provided by Pathmark prior to March 16, 2009 was insufficient to allow Discover to disclaim, as Pathmark "did not advise when [it] became aware of the surgeries or the potential value of the claim." (Pl.'s Reply at 6.) Indeed, Discover argues that it was not until it reviewed defense counsel's litigation file for the underlying action on April 2, 2009 that it became clear that Pathmark's notice was untimely. (*Id.*) After its file review, Discover issued the second RoR letter 11 days later, in which Discover noted that "from our investigation, we have discovered that Pathmark was well aware of the severity of the plaintiff's injuries, the multiple surgeries she had undergone and the exposure presented as early as November 2006 when the bill of particulars was received." (*See* McKenna Aff., Ex. G at 1.) Based on this record, the Court concludes that a material factual dispute exists regarding when Discover received sufficient facts to disclaim coverage based on late notice. Consequently, the Court cannot determine as a matter of law on the current record whether Discover's subsequent disclaimer was made in a timely fashion, and, thus, the Court denies both parties' summary judgment motions. *Cf. Morris Park Contracting Corp.*, 822 N.Y.S.2d at 619-20 (finding disputed issue of fact existed as to timely notice by insured and timely disclaimer by insurer where there was "some evidence" that insured may have had sufficient knowledge at an earlier time to alert insurer that excess coverage would be implicated but insured disputed that allegation and stated it was aware of value of claim only at a later date when bill of particulars was received).

Furthermore, the cases cited by Pathmark to demonstrate the unreasonableness of Discover's delayed disclaimer are distinguishable from the facts of this case. For example, in *Dependible Janitorial Services, Incorporated v. Transcontinental Insurance Company*, 622 N.Y.S.2d 632 (App. Div. 1995), the insurer offered no explanation whatsoever for the delay in disclaiming coverage, beyond a mere conclusory statement that an investigation was needed. *Id.* at 634-35 ("The only evidence in the record possibly explaining the delay is found in defendant's letter of denial, wherein its claims representative states that the second

---

[4] The Court notes that the documents that were attached to Pathmark's notice of claim are not part of the record on summary judgment.

9

complaint 'required that we do additional investigation to the facts of the accident and also how your insurance coverage would apply[.']   While a need for further investigation may excuse a brief delay, the conclusory statements do not provide evidentiary justification for the five-month hiatus; they do not explain what was investigated or why such an extended period of time was required.")  Here, in contrast, Discover has asserted a plausible reason justifying its investigation—namely, the need to determine when Pathmark knew that the value of the Beckmanns' claims would trigger the excess liability coverage.  Based upon the evidence presented by the parties, and drawing all reasonable inferences in Discover's favor for the purposes of Pathmark's motion, the Court concludes that Discover has presented sufficient evidence in support of its proferred explanation for its delay to defeat Pathmark's cross-motion for summary judgment. *See Ostrowski*, 2010 WL 3924679, at *4 (denying summary judgment where grounds for disclaimer were not immediately apparent from insured's notice of claim letter, and thus insurer's investigation and disclaimer could not be deemed unreasonable as a matter of law); *Trident Int'l Ltd. v. Am. Steamship Owners Mut. Protection & Indem. Assoc., Inc.*, No. 05-cv-3947 (PAC), 2008 WL 2909389, at *4 (S.D.N.Y. July 24, 2008) (noting that question of timeliness of disclaimer is usually a question of fact and denying summary judgment on the ground that factual dispute existed as to whether various intermittent communications between insurer and insured were sufficiently specific and timely to disclaim coverage); *Morris Park Contracting Corp.*, 822 N.Y.S.2d at 619-20 (denying both insurer's and insured's motions for summary judgment where dispute existed as to when insured had sufficient information to determine that the claims in the underlying action would trigger excess insurance coverage).  Similarly, the Court finds unpersuasive the cases cited by Pathmark as support for the argument that Pathmark's untimely notice should have been clear from the face of its January 23, 2009 letter. By way of example, in *West 16th Street Tenants Corporation v. Public Service Mutual Insurance Company*, 736 N.Y.S.2d 34 (App. Div. 2002), in which the court held that the grounds for disclaimer were clear from the face of the notice of claim, the insured was required to notify the insurer of *any* occurrence that might give rise to a claim. *Id.* at 35.  In this case, however, Pathmark was not required to notify Discover of all claims or suits brought against Pathmark; if that were the case, Pathmark's notice letter, sent nearly three years after Beckmann's injuries, almost certainly would have been untimely on its face. Instead, Pathmark was only obligated to notify Discover of claims that would have triggered the specific monetary requirements of the excess liability policy.  Because there are disputed issues of fact in the record regarding the necessity and timing of Discover's investigation (as discussed *supra*), summary judgment on behalf of either party is inappropriate.[5]

---

[5] The remaining cases cited by Pathmark are distinguishable for the same reasons.  In *City of New York v. Northern Insurance Company of New York*, 725 N.Y.S.2d 374 (App. Div. 2001), the insured's notice of claim "showed that it was aware of the occurrence for over 16 months before notifying [the insurer]." *Id.* at 375.  Accordingly, the grounds for disclaimer were clear from the face of the notice and the insurer's investigation was unreasonable as a matter of law.  *See id.* Likewise, the court in *Nationwide Mutual Insurance Company v. Steiner*, 605 N.Y.S.2d 391 (App. Div. 1993) noted that, although the insurer might have been able to explain its delayed disclaimer, "it did not attempt to do so," thus

10

To the extent that Pathmark is advocating for a bright-line rule establishing that delays of a certain length of time are unreasonable as a matter of law, the Court rejects that argument. As the New York Court of Appeals clearly explained in *First Financial*:

> [T]he difficulty with imposing a fixed time period—which the Legislature scrupulously avoided—is that most often the question whether a notice of disclaimer has been sent "as soon as is reasonably possible" will be a question of fact, dependent on all of the circumstances of a case that make it reasonable, or unreasonable, for an insurer to investigate coverage.

*First Fin. Ins. Co.*, 801 N.E.2d at 839-40. Indeed, other courts have recognized that where an investigation by the insurer into the grounds for disclaimer was necessary and diligently conducted, delays in issuing the disclaimer may be deemed reasonable. *See United Nat'l Specialty Ins. Co. v. 1854 Monroe Ave. H.D.F.C.*, No. 07-cv-10934 (KTD), 2010 WL 2473597, at *6 (S.D.N.Y. June 16, 2010) (crediting insurer's testimony that although "the seven months difference between the time [of the accident] and the date [the insurer] received notice of [the injured party's] claim raised a 'red flag' that there may be a 'serious problem with notice,' . . . [the insurer] did not have enough information about [the insured's] knowledge of the event to disclaim coverage," and holding that insurer's "approximately thirty-two day delay in disclaiming coverage was excused as it was related to [the insurer's] reasonable investigation into [the insured's] knowledge of [the accident]"); *Marino v. CNA Ins. Co.*, No. 06-cv-5972 (CPS) (CLP), 2008 WL 1787690, at *5 (E.D.N.Y. Apr. 17, 2008) (finding 81-day delay in disclaiming reasonable where, *inter alia*, reasons for disclaiming coverage were not apparent on the face of insured's notice of claim and investigation by insurer was therefore necessary); *Mount Vernon Fire Ins. Co.*, 193 F. Supp. 2d at 677-78 (rejecting insured's argument that investigation never should have been commenced and finding that insurer's 50-day delay was reasonable as a matter of law where investigation was needed to determine when insured became aware of the accident, which was "the determining factor of whether [the insured] had given timely notice of the accident"); *Tully Constr. Co., Inc. v. TIG Ins. Co.*, 842 N.Y.S.2d 528, 531 (App. Div. 2007) (finding 42-day delay in disclaiming was reasonable where insurer "met its burden of demonstrating that its investigation was reasonably related to its completion of a thorough and diligent investigation into whether it had grounds for a disclaimer based on late notice"); *Blue Ridge Ins. Co. v. Jiminez*, 777 N.Y.S.2d 204, 205 (App. Div. 2004) ("[The insurer's] 27-day delay in disclaiming coverage was reasonable as a matter of law. The [insurer] promptly commenced an investigation when it received notice, and the investigation revealed that the [insured] learned of the alleged accident within days of its occurrence. The [insurer] then issued its disclaimer.").

---

rendering its disclaimer insufficient, particularly where the insured's notice of claim indicated on its face that it was untimely. *Id.* at 392-93. For the reasons already noted *supra*, these cases are inapposite because, in this case, the basis for disclaimer may not have been clear from Pathmark's notice and, moreover, Discover has offered evidence of an at least arguably reasonable justification for its need to delay disclaimer and investigate the timeliness of Pathmark's notice, which is sufficient to create a genuine issue of fact and overcome Pathmark's summary judgment motion.

With respect to Discover's motion, the same issues of disputed fact that preclude summary judgment in Pathmark's favor also defeat Discover's motion. In other words, crediting Pathmark's evidence and drawing all reasonable inferences in its favor for the purposes of Discover's motion, the Court concludes that Pathmark has presented sufficient evidence to defeat Discover's motion for summary judgment.

In sum, the Court denies both parties' motions for summary judgment and holds that, given the disputed factual issues in this case, a trial is needed to determine when Discover had sufficient knowledge to disclaim and whether its disclaimer, through the commencement of this lawsuit, was made in a timely fashion.

## IV. Conclusion

For the foregoing reasons, the Court denies both Discover's motion for summary judgment and Pathmark's cross-motion for summary judgment.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: October 27, 2010
Central Islip, New York

\* \* \*

The attorneys for plaintiff are John D. McKenna and Alison Diamondstein of L'Abbate, Balkan, Colavita & Contini LLP, 1001 Franklin Avenue, Garden City, New York 11530. The attorney for defendant Pathmark is Christopher J. Roess of Sobel, Kelly & Schleier, LLC, 464 New York Avenue Suite 100, Huntington, New York 11743.